JAMES D. FREEMAN
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
999 18th Street, South Terrace, Suite 370
Denver, Colorado 80202
Telephone: (303) 844-1489
Email: james.freeman2@usdoj.gov

*Attorney for Plaintiff United States of America*

MARINA V. THOMAS
Assistant Utah Attorney General
SEAN D. REYES
Utah Attorney General
195 North 1950 West P.O. Box 140873
Salt Lake City, Utah 84114-0873
Telephone: (801) 536-4137
Email: marinathomas@agutah.gov

*Attorneys for Plaintiff State of Utah*

---

## UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

---

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF UTAH, on behalf of the UTAH DEPARTMENT OF ENVIRONMENTAL QUALITY, UTAH DIVISION OF AIR QUALITY,<br><br>        Plaintiffs,<br><br>v.<br><br>CRESCENT POINT ENERGY U.S. CORP,<br><br>        Defendant. | Case No. 2:22-cv-00224-DAK<br><br>**COMPLAINT** |

Plaintiffs, the United States of America, by authority of the Attorney General of the

United States and acting at the request of the Administrator of the United States

Environmental Protection Agency ("EPA"), and the State of Utah, on behalf of the Utah

Department of Environmental Quality ("UDEQ"), Utah Division of Air Quality ("UDAQ"),

represented by the Utah Attorney General's Office under Section 19-2-117(3) of the Utah

Code, file this Complaint and allege as follows:

## NATURE OF ACTION

1.    This is a civil action against Crescent Point Energy U.S. Corp. ("Crescent

Point") pursuant to Section 113(b) of the Clean Air Act (the "Act"), 42 U.S.C. § 7413(b), and

Section 19-2-115 of the Utah Air Conservation Act (the "Utah Act"), Utah Code Ann. § 19-2-

115.

2.    Plaintiffs seek civil penalties for violations of Section 111 of the Act, 42 U.S.C.

§ 7411, and its implementing regulations at 40 C.F.R Part 60, Subparts OOOO and OOOOa;

the Utah Act and its implementing regulations at Utah Administrative Code r. R307-101-1 *et

seq.*; and Utah's federally approved State Implementation Plan ("SIP"), for unlawful emissions

of volatile organic compounds ("VOCs") from storage vessels and their associated vapor

control systems that were part of Crescent Point's oil and natural gas production systems in the

Uinta Basin.

3.    Crescent Point's failure to comply with the requirements of the Act and its

implementing regulations and the Utah Act and its implementing regulations at these facilities

resulted in significant excess VOC emissions, a precursor to ground-level ozone. Crescent

Point operated in an area where air quality does not meet the National Ambient Air Quality

Standards ("NAAQS") for ground-level ozone. Crescent Point's unlawful emissions

contributed to this exceedance of the NAAQS.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over the claims arising under the Clean Air Act pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and pursuant to 28 U.S.C. §§ 1331, 1345, and 1355.

5.     This Court has supplemental jurisdiction over UDAQ's state law claims pursuant to 28 U.S.C. § 1367.

6.     Venue is proper in this District under Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and 1395(a), because the violations that are the basis of this Complaint occurred in this District, and the facilities at issue were operated by Crescent Point in this District.

## NOTICES

7.     The EPA and UDAQ formally issued Crescent Point a Notice of Violation on July 27, 2020.

8.     Notice of this action has been given to the appropriate air pollution control agency in the State of Utah as required by Section 113(a)(1) of the Act, 42 U.S.C. § 7413(a)(1).

## DEFENDANT

9.     Crescent Point is incorporated in the State of Delaware and at all times relevant to this Complaint was doing business within the exterior boundaries of the Uintah and Ouray Indian Reservation and in the State of Utah.

10.     Crescent Point's business in Utah included the extraction and production of natural gas and oil.

11.     Crescent Point is a "person" as defined in Section 302(e) of the Act, 42 U.S.C. §7602(e) and Section 19-1-103 of the Utah Code, Utah Code Ann. § 19-1-103(4).

## FACILITIES

12.    Crescent Point owned and operated the oil and natural gas production facilities that are the subject of the violations alleged in this Complaint at least from the dates Plaintiffs inspected the facilities, as identified in this Complaint, until on or around October 18, 2019, when they were sold to Uinta Wax Operating, LLC (f/k/a CH4-Finley Operating, LLC).

13.    Crescent Point was the "owner and operator" of the oil and natural gas production facilities within the meaning of Section 111(a)(5) of the Act, 42 U.S.C. § 7411(a)(5) and 7412(a)(9) and Utah Administrative Code r. R307-101-2.

14.    These production facilities include wells that produce a mixture of oil, natural gas, and saltwater, the latter referred to as produced water. This mixture flows up the well under pressure to the well-head at the surface and then to a device called a three-phase heater treater separator.

15.    The purpose of a separator is to separate the effluent from the well into its constituent parts: hydrocarbon liquids, natural gas, and produced water.

16.    The oil and produced water, once separated from the natural gas, are temporarily held under pressure in the separator until the liquids reach a set level, at which point the valves open and the liquids flow into storage vessels kept at or near atmospheric pressure.

17.    Storage vessels are commonly referred to as storage tanks.

18.    When oil is transferred from a separator to an atmospheric storage vessel, the pressure of the oil drops, and some of the hydrocarbons in the oil, including VOCs and hazardous air pollutants ("HAPs"), vaporize into a gaseous state in a process commonly known as "flashing." After flashing occurs, the liquids continue to emit vapors due to liquid level

changes and temperature fluctuations. The additional release of gas through diurnal temperature changes occurring while the oil is stored in the storage vessel is known as "breathing" losses. Breathing losses are also known as "standing" losses. Vapors are also emitted due to "working" losses, which refers to emissions during the time period when liquids are being loaded into, or out of, the storage vessel. Flashing, working, and standing losses must be managed to prevent over-pressurization and the release of uncontrolled emissions into the atmosphere.

19.    The tops of the hydrocarbon liquid storage tanks have openings called "thief hatches." Thief hatches are equipped with gaskets that should seal tight when the thief hatch is sealed.

20.    Thief hatches serve three primary purposes: (1) they provide access to the contents of the tank for taking samples and measuring the level of the tank (known as "gauging"); (2) they provide a means of relieving pressure from the tank to prevent over-pressurization; and (3) they eliminate excessive vacuum buildup within the tanks.

21.    To prevent over-pressurization of the storage vessels, thief hatches are designed to open (or vent) when the pressure inside the vessel exceeds the pressure setting of the thief hatch. Owners and operators are required to design their facilities to ensure that thief hatches do not release emissions to the atmosphere during normal operations. Emissions due to flashing, working, or standing losses are considered normal operations.

22.    Thief hatches may emit vapors to the atmosphere if the production facility is not properly designed, if the thief hatch gaskets are not maintained, and/or if the thief hatches do not seal properly.

23.     In addition to thief hatches, the storage tanks may also be equipped with pressure relief valves ("PRVs"), which are also designed to vent at set pressures to prevent over-pressurization of the storage vessels. Similar to the requirements for thief hatches, owners and operators are required to ensure that PRVs do not release emissions to the atmosphere during normal operations.

24.     Thief hatches and PRVs are collectively known as pressure relief devices ("PRDs"). A properly maintained PRD is equipped with a weighted mechanism to ensure that its lid remains properly seated and sealed under normal operating conditions including such times when flashing, breathing/standing, or working losses may be generated.

25.     Vapors from storage vessels are captured and controlled through a series of pipes or vent lines through connections, fittings, and PRDs, collectively called a vapor control system or closed vent system. They route vapors to an emission control device, such as a combustor, or to process by way of a vapor recovery unit.

26.     A properly designed and well-maintained vapor control system ensures that VOC emissions are controlled by routing VOC vapors from the oil storage vessel through a closed vent system to a combustion device where VOC emissions are burned and destroyed at certain rate efficiencies. Alternatively, VOC emissions are routed to a process by way of a vapor recovery unit where vapors are recycled, recovered, or consumed as a product that does not vent to the atmosphere.

27.     An insufficiently designed or poorly maintained or operated vapor control system may result in VOC emissions from the vapor control system directly to the atmosphere during normal operation. For example, PRDs with seals that are worn, not properly seated, or

improperly maintained may result in the vapor control system releasing VOC emissions directly to the atmosphere.

28.     Crescent Point also owned and operated a compressor station, Ute Tribal 20-02, located within the Uintah and Ouray Reservation.

29.     A compressor station is downstream of oil and natural gas production facilities. Natural gas routed from separators is commonly sent to a natural gas pipeline for sale.

30.     As the gas travels through the pipeline, the gas stream loses pressure and cools, and liquids condense from the stream. To ensure optimal flow through the pipeline system, natural gas must be periodically recompressed at compressor stations along the pipeline. Recompression is typically done through the use of engines or turbines.

31.     Compressor stations, including the Ute Tribal 20-02, often use glycol dehydration units located on-site to remove liquid hydrocarbons and water from the gas stream to meet pipeline specifications.

## STATUTORY AND REGULATORY BACKGROUND

32.     As set forth in Section 101(b)(1) of the Act, 42 U.S.C. § 7401(b)(1), the purpose of the Act is to protect and enhance the quality of the nation's air resources, so as to promote the public health and welfare and the productive capacity of its population.

33.     As set forth in Section 19-2-101 of the Utah Act, Utah Code Ann. § 19-2-101(2), the purpose of the Utah Act is to:

> achieve and maintain levels of air quality which will protect human health and safety, and to the greatest degree practicable, prevent injury to plant and animal life and property, foster the comfort and convenience of the people, promote the economic and social development of this state, and facilitate the enjoyment of the natural attractions of this state.

**New Source Performance Standards**

34.    Section 111(b) of the Act, 42 U.S.C. § 7411(b), authorizes the EPA to promulgate standards of performance applicable to "new sources" within categories of sources that cause "air pollution which may reasonably be anticipated to endanger public health or welfare." These regulations are referred to as New Source Performance Standards ("NSPS").

35.    A "new source" is any stationary source, the construction or modification of which is commenced after the promulgation of the standards of performance that will apply to such source. 42 U.S.C. § 7411(a)(2).

36.    A "stationary source" is a building, structure, facility, or installation that emits or may emit any air pollutant. 42 U.S.C. § 7411(a)(3).

37.    In 1979, the EPA listed "Crude Oil and Natural Gas Production" as a source category that contributes significantly to air pollution and for which standards of performance would be established. 44 Fed. Reg. 49,222 (Aug. 21, 1979).

38.    It is unlawful for owners or operators of any new source to operate in violation of NSPS after the standards have gone into effect. 42 U.S.C. § 7411(e).

39.    NSPS are legally enforceable in Utah through the federal delegation to the State of Utah. *See* Utah Admin. Code r. R307-101-1; 40 C.F.R. § 60.4(b)(46); 67 Fed. Reg. 58,998 (Sept. 19, 2002); 79 Fed. Reg. 60,993 (Oct. 9, 2014). NSPS have been incorporated by reference into the Utah regulations in Utah Administrative Code implementing the Utah Act. *See* Utah Admin. Code r. R307-210-1.

**40 C.F.R. Part 60, Subpart OOOO**

40.    In 2012, the EPA promulgated NSPS regulations for the crude oil and natural gas production, transmission, and distribution industry sector. 77 Fed. Reg. 49,542 (Aug. 16,

2012). These standards were codified at 40 C.F.R. Part 60, Subpart OOOO ("NSPS Subpart OOOO"). 40 C.F.R. § 60.5360.

41.    NSPS Subpart OOOO applies to onshore affected facilities for which owners or operators commence construction, modification, or reconstruction after August 23, 2011, and on or before September 18, 2015. 40 C.F.R. § 60.5365.

42.    Among the affected facilities subject to NSPS Subpart OOOO are "storage vessel affected facilities." 40 C.F.R. § 60.5365(e). A "storage vessel affected facility" is a single storage vessel with the potential for VOC emissions equal to or greater than 6 tons per year ("tpy") as determined according to 40 C.F.R. § 60.5365(e). NSPS Subpart OOOO defines a "storage vessel" as a tank or other vessel that contains an accumulation of crude oil, condensate, intermediate oil, or produced water, and that is constructed primarily of non-earthen materials (such as wood, concrete, steel, fiberglass, or plastic) which provide structural support. 40 C.F.R. § 60.5430.

43.    NSPS Subpart OOOO requires "[a]t all times, including periods of startup, shutdown, and malfunction, owners and operators shall maintain and operate any affected facility including associated air pollution control equipment in a manner consistent with good air pollution control practice for minimizing emissions." 40 C.F.R. § 60.5370(b).

44.    Subpart OOOO sets forth two classifications of storage vessels: (i) those that began to be constructed, reconstructed, or modified after August 23, 2011, and on or before April 12, 2013 ("Group 1 storage vessels"); and (ii) those that began to be constructed, reconstructed, or modified after April 12, 2013 ("Group 2 storage vessels"). 40 C.F.R. § 60.5430.

45.     The potential for VOC emissions from a storage vessel must be calculated using a generally accepted model or calculation methodology, based on the maximum average daily throughput determined for a 30-day period of production prior to the applicable emission determination deadline. The potential for VOC emissions from a storage vessel may take into account requirements under a legally and practically enforceable limit in an operating permit or other requirements under Federal, State, local or tribal authority. 40 C.F.R. § 60.5365(e).

46.     For Group 1, owners and operators were required to submit a notification to the EPA, identifying each storage vessel affected facility in an initial annual report by July 14, 2015. The initial report must include documentation of the VOC emission rate determination and records of deviations in cases where the storage vessel affected facility was not operated in compliance with the requirements specified in 40 C.F.R. §§ 60.5395, 60.5411, 60.5412, and 60.5413, as applicable. 40 C.F.R. §§ 60.5410(h)(4), 60.5420(b), 60.5420(c)(5)(iii).

47.     For Group 2 storage vessels, owners and operators must demonstrate initial compliance by April 15, 2014, or within 60 days after startup, whichever is later. Within 90 days after the end of the initial compliance period, owners and operators must submit an initial annual report to the EPA that identifies the storage vessel affected facilities constructed, modified, or reconstructed during the reporting period and includes documentation of the VOC emission rate determination and records of deviations in cases where the storage vessel affected facility was not operated in compliance with the requirements specified in 40 C.F.R. §§ 60.5395, 60.5411, 60.5412, and 60.5413, as applicable. 40 C.F.R. §§ 60.5410(h)(4), 60.5420(b), 60.5420(c)(5)(iii).

48.     A storage vessel affected facility that subsequently has its potential for VOC emissions decrease to less than 6 tpy shall remain an affected facility under this subpart. 40 C.F.R. § 60.5365(e)(2).

49.     After the initial annual report, owners and operators must submit subsequent annual reports to the EPA identifying the storage vessel affected facilities constructed, modified, or reconstructed during the reporting period. Annual reports must include documentation of the VOC emission rate determination and records of deviations in cases where the storage vessel affected facility was not operated in compliance with the requirements specified in 40 C.F.R. §§ 60.5395, 60.5411, 60.5412, and 60.5413, as applicable. 40 C.F.R. §§ 60.5420(b)(6), 60.5420(c)(5)(iii).

## 40 C.F.R. Part 60, Subpart OOOOa

50.     In 2016, the EPA made amendments to the 2012 NSPS. 81 Fed. Reg. 35,898 (June 3, 2016). These standards were codified at 40 C.F.R. Part 60, Subpart OOOOa ("NSPS Subpart OOOOa"). 40 C.F.R. § 60.5360a.

51.     NSPS Subpart OOOOa applies to affected facilities for which owners or operators commence construction, modification, or reconstruction after September 18, 2015. 40 C.F.R. § 60.5365a.

52.     Like NSPS Subpart OOOO, among the affected facilities subject to NSPS Subpart OOOOa are "storage vessel affected facilities." 40 C.F.R. § 60.5365a(e). A "storage vessel affected facility" is a single storage vessel with the potential for VOC emissions equal to or greater than 6 tpy as determined according to 40 C.F.R. § 60.5365a(e)(1). The potential for VOC emissions must be calculated using a generally accepted model or calculation methodology, based on the maximum average daily throughput as defined in

40 C.F.R. § 60.5430a, determined for a 30-day period prior to the applicable emissions determination deadline specified in paragraphs (e)(2)(i)-(ii) of Section 60.5430a. The determination may take into account requirements under a legally and practicably enforceable limit in an operating permit or other requirements established under a Federal, State, local, or tribal authority. 40 C.F.R. § 60.5365a(e)(1).

53.    Owners and operators of storage vessel affected facilities under Subpart OOOOa must demonstrate initial compliance by August 2, 2016, or within 60 days after startup, whichever is later. No later than 90 days after the end of the initial compliance period, owners and operators must submit an initial report to the EPA that identifies storage vessel affected facilities constructed, modified, or reconstructed during the reporting period and includes documentation of the VOC emission rate determination according to 40 C.F.R. § 60.5365a(e)(1); records of deviations in cases where the storage vessel affected facility was not operated in compliance with the requirements specified in 40 C.F.R. §§ 60.5395, 60.5411, 60.5412, and 60.5413, as applicable; and a statement that the owner or operator has met the requirements of 40 C.F.R 40 C.F.R. §§ 60.5410a(h)(2)-(3). 40 C.F.R. §§ 60.5410a(h)(1)-(6), 60.5420a(b)(6)(i)-(v).

54.    A storage vessel affected facility that subsequently has its potential for VOC emissions decrease to less than 6 tpy shall remain an affected facility under this subpart. 40 C.F.R. § 60.5365a(e)(4).

**VOC Emissions Control Standards for Storage Vessel Affected Facilities under NSPS Subpart OOOOa**

55.    NSPS Subpart OOOOa requires "[a]t all times, including periods of startup, shutdown, and malfunction, owners and operators shall maintain and operate any affected

facility including associated air pollution control equipment in a manner consistent with good air pollution control practice for minimizing emissions." 40 C.F.R. § 60.5370a(b).

56.    If the owner or operator of a storage vessel affected facility uses a control device to reduce VOC emissions from a storage vessel affected facility, the owner or operator must (a) equip the storage vessel with a cover connected to a closed vent system and (b) route VOC emissions to a control device or process in accordance with the requirements of 40 C.F.R. § 60.5395a(b)(1), specified below:

a.  The cover must meet the requirements of 40 C.F.R. § 60.5411a(b);

b.  The closed vent system must meet the requirements of 40 C.F.R. §§ 60.5411a(c) and 60.5411a(d); and

c.  The control device must meet the requirements of 40 C.F.R. § 60.5412a(c).

**NSPS Subpart OOOOa Cover Requirements**

57.    Owners and operators must comply with the following requirements for covers on storage vessel affected facilities under NSPS Subpart OOOOa:

a.  The cover and all openings on the cover (e.g., access hatches and pressure relief valves) shall form a continuous impermeable barrier over the entire surface area of the liquid in the storage vessel. 40 C.F.R. § 60.5411a(b)(1).

b.  Each cover opening must be secured in a closed, sealed position whenever material is in the unit, except during those times specified in 40 C.F.R. § 60.5411(b)(2)(i)–(iv). 40 C.F.R. § 60.5411a(b)(2).

c.  Each storage vessel thief hatch must be equipped, maintained, and operated with a weighted mechanism or equivalent, to ensure that the lid remains properly seated and sealed under normal operating conditions, including such

times when working, standing/breathing, and flash emissions may be generated. The gasket material for the hatch must be selected based on the composition of the fluid in the storage vessel and weather conditions. 40 C.F.R. § 60.5411a(b)(3).

### NSPS Subpart OOOOa Closed Vent System Requirements

58.    Owners and operators must comply with the following requirements for closed vent systems associated with storage vessel affected facilities under NSPS Subpart OOOOa:

    a.  Design the closed vent system to route all gases, vapors, and fumes emitted from the material in the storage vessel to a control device that meets the requirements specified in § 60.5412(c) and (d), or to a process. 40 C.F.R. § 60.5411a(c)(1).

    b.  Design and operate a closed vent system with no detectable emissions, as determined using olfactory, visual and auditory ("OVA") inspections. 40 C.F.R. § 60.5411a(c)(2).

### NSPS Subpart OOOOa Control Device Requirements

59.    Owners and operators must comply with the following requirements for control devices to reduce emissions from storage vessel affected facilities under NSPS Subpart OOOOa:

    a.  Reduce VOC emissions from storage vessel affected facilities by 95% within 60 days of startup. 40 C.F.R. § 60.5395a(a)(2).

    b.  Ensure each enclosed combustion device is maintained in a leak-free condition. 40 C.F.R. §§ 60.5412a(d)(1)(i), 60.5413a(e)(7).

    c.   Install and operate a continuous burning pilot flame.

        40 C.F.R. §§ 60.5412a(d)(1)(ii), 60.5413a(e)(2).

    d.   Design and operate a flare in accordance with the requirements of

        40 C.F.R. § 60.18. 40 C.F.R. §§ 60.5412a(d)(3), 60.5425a.

    e.   Operate the control device with no visible emissions, except for periods not to

        exceed a total of one minute during any fifteen-minute period, as determined

        using EPA Method 22, 40 C.F.R. Part 60, Appendix A. 40 C.F.R. §§

        60.5412a(d)(1)(iii), 60.5413a(e)(3), 60.5417a(h)(1)(ii).

    f.   Operate each control device used to comply with NSPS Subpart OOOOa at all

        times when gases, vapors, and fumes are vented from storage vessel affected

        facilities through the closed vent system to the control device.

        40 C.F.R. § 60.5412a(d)(4).

### NSPS Subpart OOOOa Initial Compliance Period and Subsequent Reporting Requirements

60.    For each storage vessel affected facility, owners and operators must demonstrate initial compliance by August 2, 2016, or within 60 days after startup, whichever is later. 40 C.F.R. § 60.5410a(h). The period ends no later than one year after the initial startup date or no later than one year after August 2, 2016. 40 C.F.R. § 60.5410a.

61.    Within 90 days after the end of the initial compliance period, owners and operators must submit an initial annual report that includes the identification and location of each storage vessel affected facility constructed, modified, or reconstructed during the reporting period, documentation of the VOC emission rate determination, records of deviations in cases where the storage vessel affected facility was not operated in compliance with the requirements specified in 40 C.F.R. §§ 60.5395a, 60.5411a, 60.5412a, and 60.5413a, as

applicable, and a statement indicating requirements specified in 40 C.F.R. § 60.5410a(h)(2) and (3) have been met. 40 C.F.R. §§ 60.5410a(h)(5), 60.5420a(b), 60.5420a(c)(5)(iii).

62.    Subsequent annual reports are due to the EPA no later than the same date each year as the initial annual report. 40 C.F.R. § 60.5420a(b).

63.    All information required to be submitted to the EPA for NSPS Subpart OOOOa must also be submitted to the appropriate state agency to which authority has been delegated. 40 C.F.R. § 60.4(b).

64.    The State of Utah was delegated authority for implementation and enforcement of the NSPS effective February 27, 2014. 40 C.F.R. § 60.4(b)(46). *See* 79 Fed. Reg. 60,993 (Oct. 9, 2014). The NSPS Subparts OOOO and OOOOa regulations were incorporated by reference into the Utah Administrative Code and the State of Utah was delegated authority for these subparts. *See* Utah Admin. Code r. R307-210-1. This implementation and enforcement authority is concurrent with the federal authority.

## New Source Review

65.    Section 110(a)(2)(C) of the Act requires that each state's implementation plan under the Act include a program to regulate the construction and modification of stationary sources, including a permitting program as required by Parts C and D of Title I of the Act. 42 U.S.C. § 7410(a)(2)(C).

66.    Sections 301(a) and 301(d)(4) of the Act, as implemented through the Tribal Authority Rule, provide the EPA with broad discretion to develop a program to regulate new and modified minor sources in Indian Country. 42 U.S.C. §§ 7601(a), 7601(d).

67.    The EPA published the "Review of New Sources and Modifications in Indian Country," effective July 1, 2011. 76 Fed. Reg. 38,748 (July 1, 2011). This rule created two

New Source Review ("NSR") regulations for the protection of air quality in Indian Country, including the "Federal Indian Country Minor NSR Program," codified at 40 C.F.R. §§ 49.151-49.161.

68.    The purpose of the Federal Indian Country Minor NSR Program is to establish a preconstruction permitting program for all new and modified minor sources and minor modifications at major sources located in Indian Country. *See* 40 C.F.R. § 49.151(b)(1).

69.    A "minor source" means a source with a potential to emit ("PTE") regulated NSR 40 pollutants in amounts that are less than the major source thresholds in 40 C.F.R. § 49.167 or § 52.21, as applicable, but equal to or greater than the minor NSR thresholds in 40 C.F.R § 49.153. 40 C.F.R. § 49.152(d).

70.    A "synthetic minor source" means a source that otherwise has the PTE regulated NSR pollutants in amounts that are equal to or greater than the major source thresholds in 40 C.F.R. § 49.167, § 52.21, or § 71.2, as applicable, but that has taken an enforceable restriction such that its PTE is less than such amounts for major sources. *Id.*

71.    VOCs are among the regulated NSR pollutants. *See* Table 1, 40 C.F.R. § 49.153.

72.    "Hazardous Air Pollutants" ("HAPs") under 40 C.F.R. § 63.2 are defined any air pollutant listed under Section 112(b) of the Act. Section 112(b) of the Act includes, amongst other air pollutants, benzene. 42 U.S.C. § 7412(b).

73.    A "synthetic minor HAP source" means a source that otherwise has the PTE hazardous air pollutants in amounts that are equal to or greater than the major source thresholds for HAPs found in 40 C.F.R. § 63.2, but that has taken an enforceable restriction so that its PTE is less than such amounts for major sources. *Id.*

74.     Construction of a new synthetic minor source/synthetic minor HAP source or modification to an existing synthetic minor source and/or synthetic minor HAP source on or after August 30, 2011, requires a permit to be obtained pursuant to 40 C.F.R. § 49.158. 40 C.F.R. § 49.151(c)(ii).

75.     If an existing synthetic minor permit source and/or synthetic minor HAP source was established under a permit with enforceable emissions limitation issued pursuant to 40 C.F.R. Part 71, the reviewing authority has the discretion to require an owner/operator to submit a permit application for synthetic minor source permit under this program by September 4, 2012, and pursuant to 40 C.F.R. § 49.158. *Id.* § 49.151(c)(ii)(C).

76.     Among other requirements, all synthetic minor source permits must contain the emissions limits set by the EPA for each NSR pollutant, monitoring to ensure compliance with emission limitations, periodic testing of emissions monitoring, and recordkeeping and reporting requirements. *See* 40 C.F.R. § 49.155(a)(2)-(4).

**Federal 10-22-6-20 Well Production Facility**

77.     On July 18, 2019, the EPA issued a Synthetic Minor Source Permit to Construct (SMNSR-UO-001835-2017.002) to Crescent Point (the "Permittee") for the Federal 10-22-6-20 well production facility. The permit became effective August 19, 2019.

78.     Condition I.C.1 of the permit requires, among other things, that the Permittee route all produced natural gas emissions from the facility's three-phase heater treater separator through a closed-vent system to a flare designed and operated according to requirements as specified in the permit. *See* Condition I.C.1(b) of Permit SMNSR-UO-001835-2017.002.

79.     Condition I.C.3 of the permit requires, among other things, that the flare described in Paragraph 788 be equipped with one of the following:

    a.   A continuous burning pilot flame, a thermocouple and a malfunction alarm and notification system that is activated if the pilot flame fails; or

    b.   An electronically controlled automatic ignition system with a thermocouple that reignites the pilot flame whenever it goes out.

*See* Condition I.C.3(c)(iii) of Permit SMNSR-UO-001835-2017.002.

80.     Condition I.C.3 of the permit also requires that the flare be equipped with a monitoring system for continuous measuring and recording of the parameters that indicate proper operation of the flare and the continuous burning pilot flame or automatically controlled automatic ignition system. Where sufficient to meet the monitoring requirements in this permit, the Permittee may use a Supervisory Control and Data Acquisition (SCADA) system to monitor and record the required data. *See* Condition I.C.3(c)(iv) of Permit SMNSR-UO-001835-2017.002.

81.     Condition I.C.4 of the permit requires the Permittee to perform monthly visual inspections of the flare and closed-vent system, including: (i) inspection of any thermocouple, malfunction alarm, and notification system that is activated if the pilot flame fails, or electronically controlled automatic ignition device that reignites the pilot flame if it goes out, as applicable, to ensure proper operation, (ii) performing an AVO inspection of the closed-vent system to ensure proper condition and functioning, (iii) inspection of the parameter monitoring system and recorded measurements to ensure proper operation of the flare and monitoring system, and (iv) a response to any malfunction alarm or other indication of improper flare, closed-vent system or monitoring system operation by following the manufacturer's, vendor's, or Permittee's instructions to identify the cause of the deficiency and make any necessary repairs within 30 days of identifying the deficient condition to return the enclosed combustor

and monitoring system to compliant operation. *See* Condition I.C.4(a) of Permit SMNSR-UO-001835-2017.002.

82.     Condition I.C.4 of the permit also requires that the Permittee perform, monthly visual inspections of the flare to ensure it operates with no visible smoke emissions. If any visible smoke emissions are detected, the Permittee shall take actions as required by Conditions I.C.4(b)(i) through (iv), as applicable. *See* Condition I.C.4(b) of Permit SMNSR-UO-001835-2017.002.

83.      Condition I.C.5 of the permit requires that the Permittee document and maintain records of all inspections and testing for the closed-vent system and flare, including any corrective actions taken.

84.     Condition I.D.1 of the permit requires, among other things, routing of all emissions from working, standing, breathing, and flashing losses from the crude oil and produced water storage tanks at the Federal 10-22-6-20 facility through a closed-vent system to an enclosed combustor designed and operated according to requirements as specified in the permit. *See* Condition I.D.1(b) of Permit SMNSR-UO-001835-2017.002.

85.     Condition I.D.3 of the permit requires, among other things, that the enclosed combustor described in Paragraph 84 be equipped with a monitoring system for continuous measuring and recording of the parameters that indicate proper operation of the enclosed combustor and the continuous burning pilot flame or automatically controlled automatic ignition system. Where sufficient to meet the monitoring requirements in this permit, the Permittee may use a Supervisory Control and Data Acquisition ("SCADA") system to monitor and record the required data. *See* Condition I.D.3(c)(iv) of Permit SMNSR-UO-001835-2017.002.

86.    Condition I.D.4 of the permit requires the Permittee to perform, among other things:

a.   Monthly AVO inspections of tank thief hatches, covers, seals, pressure relief valves, and the closed-vent system, to ensure proper condition and functioning, and repair within 30 days as needed. *See* Condition I.D.4(a) of Permit SMNSR-UO-001835-2017.002.

b.   Monthly visual inspections of the enclosed combustor used to control emissions from crude oil and produced water storage tanks. The monthly inspections shall include: (i) verification that the pilot light on the enclosed combustor is lit, (ii) notation if the enclosed combustor is being bypassed at the time of inspection, (iii) inspection of the thermocouple, malfunction alarm, and notification system if the pilot flame fails or the electronically controlled automatic ignition device, as applicable, to ensure proper operation, (iv) inspection of the parameter monitoring system and recorded measurements to ensure proper operation of the enclosed combustor and monitoring system, and (v) response to any malfunction alarm or other indication of improper enclosed combustor or monitoring system operation by following the manufacturer's, vendor's, or Permittee's instructions to identify the cause of the deficiency and make any necessary repairs within 30 days of identifying the deficient condition to return the enclosed combustor and monitoring system to compliant operation. *See* Condition I.D.4(b) of Permit SMNSR-UO-001835-2017.002.

c.   Monthly visual inspections of the enclosed combustor to ensure it operates with no visible smoke emissions, and performance of specific repair actions as

21

required by Conditions I.D.4(c)(i) through (iv) as needed. *See* Condition

I.D.4(c) of Permit SMNSR-UO-001835-2017.002.

87.     Condition I.D.5 of Permit SMNSR-UO-001835-2017.002 requires that the

Permittee document and maintain records of inspections for all oil and produced water storage

tanks and the closed-vent system, and all enclosed combustor inspections and testing, including

any corrective actions taken.

88.     Condition I.F.1 of Permit SMNSR-UO-001835-2017.002 requires the Permittee

to submit a written annual report summarizing compliance with the requirements for all

emissions units at the Federal 10-22-6-20 facility each year no later than April 1st. The annual

report must cover the period for the previous calendar year. All reports must be certified to

truth and accuracy by the person responsible for Clean Air Act compliance for the Permittee.

**Ute Tribal 20-02 Compressor Station**

89.     On August 21, 2019, the EPA issued a Synthetic Minor Source Permit to

Construct (SMNSR-UO-008008-2017.001) to Crescent Point for the Ute Tribal 20-02

Compressor Station. The permit became effective September 20, 2019.

90.     The Synthetic Minor Source Permit for Ute Tribal 20-02 Compressor Station

sets emission limits for the HAP, benzene, at 1.0 ton in any consecutive 12-month

period. *See* Condition I.C.2, Permit SMNSR-UO-008008-2017.001.

91.     Condition I.C.8 of Permit SMNSR-UO-008008-2017.001 requires, among other

things:

a.   Monthly AVO inspections of the closed-vent system associated with the

Triethylene Glycol (TEG) dehydrator to ensure proper condition and

functioning, and repair within 30 days as needed. *See* Condition I.C.8(a) of

Permit SMNSR-UO-008008-2017.001.

b.  The Permittee shall perform, at minimum, monthly visual inspections of the enclosed combustor used to control emissions from the TEG dehydrator. The monthly inspections shall include: (i) verification that the pilot light on the enclosed combustor is lit and if the enclosed combustor is being bypassed at the time of inspection, (ii) inspection of the thermocouple, and the malfunction alarm and notification system if the pilot flame fails or the electronically controlled automatic ignition device, as applicable, to ensure proper operation, (iii) inspection of the parameter monitoring system and recorded measurements to ensure proper operation of the enclosed combustor and monitoring system, and (iv) response to any malfunction alarm or other indication of improper enclosed combustor or monitoring system operation by following the manufacturer's, vendor's, or Permittee's instructions to identify the cause of the deficiency and make any necessary repairs within 30 days of identifying the deficient condition to return the enclosed combustor and monitoring system to compliant operation. All repairs and maintenance activities shall be recorded in a maintenance and repair log and shall be made available for inspection. *See* Condition I.C.8(b) of Permit SMNSR-UO-008008-2017.001.

c.  Monthly visual inspections of the enclosed combustor to ensure it operates with no visible smoke emissions, and performance of specific repair actions as required by Conditions I.C.8(c)(i) through (iv), as applicable. *See* Condition I.C.8(c) of Permit SMNSR-UO-008008-2017.001.

92.     Condition I.C.9 of the permit requires, among other things, that the Permittee document and maintain records of all inspections for the closed-vent system and all inspections and testing for the enclosed combustor, including any corrective actions taken. *See* Condition I.C.9(c) of Permit SMNSR-UO-008008-2017.001.

93.     Condition I.E.1 of Permit SMNSR-UO-008008-2017.001 requires the Permittee to submit a written annual report summarizing compliance with the requirements for all emissions units at the Ute Tribal 20-02 Compressor Station each year no later than April 1st. The annual report must cover the period for the previous calendar year. All reports must be certified to truth and accuracy by the person responsible for Clean Air Act compliance for the Permittee.

## National Ambient Air Quality Standards (NAAQS) for Ozone

94.     Section 108 of the Act, 42 U.S.C. § 7408, directs the EPA to identify air pollutants that "may reasonably be anticipated to endanger public health or welfare" and to issue air quality criteria for those pollutants based on "the latest scientific knowledge" about their effects on public health and the environment. These pollutants are known as "criteria pollutants."

95.     Section 109 of the Act, 42 U.S.C. § 7409, requires EPA to establish NAAQS for criteria pollutants. The primary standard must be set at the level "requisite to protect the public health" with an adequate margin of safety, and the secondary standard is intended to protect "the public welfare." According to Section 302(h) of the Act, 42 U.S.C. § 7602(h), public welfare effects are "effects on soils, water, crops, vegetation" and other environmental impacts including, but not limited to, effects on animals, wildlife, property, and "effects on economic values."

96.     Ground-level ozone, commonly known as "smog," is one of six criteria pollutants for which EPA has promulgated national standards, due to its adverse effects on human health and the environment. Short-term exposures (1 to 3 hours) to ground-level ozone can cause acute health effects observed even at low concentrations, including temporary pulmonary inflammation. Long-term exposure (months to years) may cause permanent damage to lung tissue. Children and adults who are active outdoors are particularly susceptible to the adverse effects of exposure to ozone. *See* 73 Fed. Reg. 16,436 (Mar. 27, 2008).

97.     Ozone is not emitted directly from sources of air pollution. Ozone is a photochemical oxidant, formed when certain chemicals react with oxygen in the presence of sunlight. These chemicals—VOC and nitrogen oxides ("NOx")—are called "ozone precursors." Sources that emit ozone precursors are regulated to reduce ground-level ozone. *See* 62 Fed. Reg. 38,856 (July 18, 1997).

98.     In 2015, EPA lowered the primary and secondary NAAQS for ozone to 0.070 ppm (measured as an 8-hour average). 80 Fed. Reg. 65,292 (Oct. 26, 2015).

99.     Effective August 2018, the EPA designated parts of the Uinta Basin in Utah as a marginal nonattainment area with respect to the 2015 NAAQS for 8-hour ozone. 83 Fed. Reg. 25,776, 25,837 (June 4, 2018).

### Utah State Implementation Plan (SIP)

100.    Pursuant to Section 107(a) of the Act, 42 U.S.C. § 7407(a), states are primarily responsible for ensuring attainment and maintenance of the NAAQS. States implement the NAAQS on a region-by-region basis, within air quality control regions (or "areas") throughout the state. An area with ambient air concentrations that meets the NAAQS for a particular pollutant is an "attainment" area. An area with ambient air concentrations that exceed the

NAAQS is a "nonattainment" area. And an area that cannot be classified due to insufficient data is "unclassifiable."

101.    Pursuant to Section 110(a) of the Act, 42 U.S.C. § 7410(a), each state must adopt and submit to EPA for approval a plan that provides for the implementation, maintenance, and enforcement of the NAAQS for each criteria pollutant in each air quality control region within the state. This plan is known as a state implementation plan or "SIP." Section 110(a)(2)(A) of the Act, 42 U.S.C. § 7410(a)(2)(A), requires that each SIP include enforceable emissions limitations and other "control measures, means, or techniques" to ensure attainment of the NAAQS.

102.    Pursuant to Section 110(c)(3) of the Act, 42 U.S.C. § 7410(c)(3), after enforceable state emission limitations are approved by EPA, these SIP provisions are federally enforceable under Sections 113(a) and (b) of the Act, 42 U.S.C. § 7413(a) and (b). *See* 40 C.F.R § 52.23.

103.    As required by Section 110(a) of the Act, 42 U.S.C. § 7410(a), the State of Utah has periodically adopted regulations to provide for the implementation, maintenance, and enforcement of the ozone NAAQS.

104.    Parts of the Uinta Basin in Utah are currently classified as a marginal nonattainment area for 2015 NAAQS for 8-hour ozone. 83 Fed. Reg. at 25,837. Under this classification, the State of Utah was required to submit the following SIP elements: (i) 2017 baseline emissions inventory; (ii) NSR program certification; and (iii) major source emissions statements. 42 U.S.C. § 7511a(a).

105.    The State of Utah has satisfied all these SIP elements by submitting the 2017 emissions inventory in August of 2020, the NSR program certification on July 29, 2021, and the major source emissions statements on October 28, 2020.

**Approval Orders Issued Through Utah's SIP-Approved Permitting Process**

106.    The State of Utah requires all potential sources of air pollution, unless exempt by its regulations, to submit a notice of intent and obtain an Approval Order ("AO") prior to construction, modification, or relocation. Utah Admin. Code r. R307-401.

107.    The EPA approved the State of Utah's permitting program at Utah Administrative Code r. R307-401 into Utah's SIP minor new source review program. *See* 79 Fed. Reg. 7,072 (Feb. 6, 2014). Requirements in AOs are therefore federally enforceable. *See* 40 C.F.R § 52.23.

108.    The UDAQ issued AOs to Crescent Point for several oil and natural gas production facilities in the Uinta Basin in Utah. Relevant AO numbers are listed in the table below and were in effect at all times pertinent to this Complaint.

| Table 1: Approval Order Numbers Per Facility | |
|---|---|
| **Facility Name** | **AO Number** |
| Coleman Cordova 13.5-28-3-1E-H1 (f/k/a Coleman Tribal 3-33-3-1E-1H) | DAQE-AN157330001-17 |
| Coleman Cordova 14-28-3-1E-H1 | DAQE-GN157330002-17 |
| Coleman Tribal 7-18-4-2E | DAQE-AN145880002-15 |
| Cox 13-31-3-1E | DAQE-AN154950002-17 |
| Deep Creek 15-24-3-1E | DAQE-AN146920001-13 |
| Deep Creek 16-24-3-1E | DAQE-AN146960002-15 |
| Deep Creek 2-16-4-2E | DAQE-AN146590002-18 |
| Deep Creek 6-16-4-2E | DAQE-AN146650002-18 |
| Deep Creek 7-16-4-2E | DAQE-AN146680003-16 |
| Kendall 13-7-3-1E | DAQE-AN147100002-14 |
| Kendall Tribal 1-13-3-1W | DAQE-AN155340001-16 |
| Kendall Tribal 1-13-3-1W-H1 | DAQE-AN146800003-17 |
| Marsh 12-35-3-1E | DAQE-AN147270002-15 |
| Marsh 13-35-3-1E | DAQE-AN145630004-15 |
| Merritt 1-18-3-1E-H1 | DAQE-AN146670003-18 |

| (f/k/a Merritt 1.5-18-3-1E-H1) | |
|---|---|
| Merritt 3-18-3-1E | DAQE-AN147820002-15 |
| ULT 12-34-3-1E | DAQE-AN147610001-13 |
| ULT 3-35-3-1E | DAQE-AN147420002-15 |
| Ute Energy 14-27-3-1E | DAQE-AN146240004-16 |

109.    Condition I.5 of each AO requires the owners/operators of oil and natural gas production facilities, at all times, including startup, shutdown, and malfunction to the extent practicable, to operate equipment approved under an AO, including associated air pollution control equipment, in a manner consistent with good air pollution control practice for minimizing emissions.

110.    Condition II.B.2.c of the AOs for Coleman Tribal 7-18-4-2E, Kendall 13-7-3-1E, Marsh 12-35-3-1E, and ULT 12-34-3-1E require owners or operators of oil and natural gas production facilities to keep storage tank thief hatches closed and latched except during tank unloading or other maintenance activities.

111.    Condition II.B.2.c of the AOs for Coleman Cordova 13.5-28-3-1E-H1, Coleman Cordova 14-28-3-1E-H1, Deep Creek 2-16-4-2E, Deep Creek 6-16-4-2E, and Merritt 1-18-3-1E-H13, and Condition II.B.3.c of the AO for Kendall Tribal 1-13-3-1W-H1, require an owner or operator to keep storage tank thief hatches and other tank openings closed and sealed except during tank unloading or other maintenance activities.

112.    Condition II.B.2.b of the AOs for Coleman Cordova 13.5-28-3-1E-H1, Coleman Cordova 14-28-3-1E-H1, Cox 13-31-3-1E, Deep Creek 2-16-4-2E, and Deep Creek 6-16-4-2E, Condition II.B.3.a of the AOs for Deep Creek 7-16-4-2E, Kendall Tribal 1-13-3-1W, and Ute Energy 14-27-3-1E, and Condition II.B.3.b of the AOs for Kendall Tribal 1-13-3-1W-H1 and Merritt 1-18-3-1E-H1, require an owner or operator to route all

exhaust/gases/vapors/fumes from oil storage tanks and produced water storage tanks to an operating combustor at all times after startup of production.

113.    Condition II.B.3.a of the AOs for Kendall 13-7-3-1E and ULT 12-34-3-1E require an owner or operator to route all exhaust gas/vapors from oil storage tanks to an operating combustor/flare.

114.    Condition II.B.4.a of the AOs for Coleman Cordova 13.5-28-3-1EH1, Coleman Cordova 14-28-3-1E-H1, and Cox 13-31-3-1E, and Condition II.B.3.b of the AO for Ute Energy 14-27-3-1E require that each combustor operate with a continuous pilot flame and be equipped with an auto-igniter.

115.    Condition II.A.2 of the AO for ULT 12-34-3-1E lists the approved installation as consisting of two (2) oil storage tanks, with a capacity of 400 barrels each.

**State of Utah Air Quality Regulations for the Oil & Gas Industry**

116.    Effective December 2014, under Utah air regulations implementing the Utah Act, all oil and natural gas exploration, production, and transmission operations, and all well production facilities, must comply with general provisions for prevention of emissions and use of good air pollution control practices. Utah Admin. Code r. R307-501.

117.    "Well production facilities" include "all equipment at a single stationary source directly associated with one or more oil wells or gas wells. This equipment includes, but is not limited to, equipment used for production, extraction, recovery, lifting, stabilization, storage, separation, treating, dehydration, combustion, compression, pumping, metering, monitoring, and flowline." *Id*. r. R307-501-2(2).

118.    Utah's general provisions for oil and gas industry in the Utah air regulations implementing the Utah Act require the following:

29

a.  "All crude oil, condensate, and intermediate hydrocarbon liquids collection, storage, processing and handling operations, regardless of size, shall be designed, operated and maintained so as to minimize emission of volatile organic compounds to the atmosphere to the extent reasonably practicable." *Id*. r. R307-501-4(1)(a).

b.  "At all times, including periods of start-up, shutdown, and malfunction, the installation and air pollution control equipment shall be maintained and operated in a manner consistent with good air pollution control practices for minimizing emissions." *Id*. r. R307-501-4(1)(b).

c.  "All air pollution control equipment shall be operated and maintained pursuant to the manufacturing specifications or equivalent to the extent practicable and consistent with technological limitations and good engineering and maintenance practices." *Id*. r. R307-501-4(2)(a).

119.    "Installation" means a "discrete process with identifiable emissions which may be part of a larger industrial plant. Pollution equipment shall not be considered a separate installation or installations." *Id*. r. R307-101-2.

120.    The provisions in Utah Air Quality Regulations for Oil and Gas Industry referenced in Paragraphs 116-118 are enforceable only by the State of Utah.

## FACTUAL BACKGROUND

121.    From at least June 26, 2018 until on or about October 18, 2019, Crescent Point owned and operated the oil and natural gas production facilities listed in Exhibit 1 and located on the Uintah and Ouray Indian Reservation and in the State of Utah.

122.    Based on well production data reported to the Utah Division of Oil, Gas and

30

Mining ("UDOGM"), the storage vessels at the following oil and natural gas production

facilities are subject to requirements for storage vessel affected facilities in NSPS Subpart

OOOO: Deep Creek 15-24-3-1E, Deep Creek 16-24-3-1E, Deep Creek 7-16-4-2E, Kendall 13-

7-3-1E, Marsh 12-35-3-1E, Merritt 3-18-3-1E, ULT 12-34-3-1E, and ULT 3-35-3-1E.

123.    Based on information reported by Crescent Point in its annual NSPS Subpart

OOOOa reports, storage vessels at the following oil and natural gas production facilities are

subject to requirements for storage vessel affected facilities in NSPS Subpart OOOOa: Four

Star Federal 6-27-7-20E, Kendall Tribal 13-7-6-3-1E-H4, Kendall Tribal 4-18-3-1E-H3, Ute

Tribal 2-13-4-2E-H1, Ute Tribal 2-22-27-3-2E-H1, Ute Tribal 3-24-3-1W-H1, Ute Tribal 3-35-

2-3-2E-H1, and Ute Tribal 4-23-3-1W-H1.

124.    Based on well production data reported to the UDOGM, the storage vessels at

the following oil and natural gas production facilities are subject to requirements for storage

vessel affected facilities in NSPS Subpart OOOOa: Coleman Cordova 13.5-28-3-1E-H1,

Coleman Cordova 14-28-3-1E-H1, Kendall Tribal 1-13-3-1W-H1, and Kendall Tribal 13-7-6-

3-1E-H4.

125.    In accordance with 40 C.F.R. § 60.5395a(b)(1), the storage vessels referred to in

Paragraphs 123 and 124 are subject to the requirements for storage vessel covers at 40 C.F.R. §

60.5411a(b), and the requirements for storage vessel closed vent systems at 40 C.F.R §

60.5411a(c), because Crescent Point routed the oil and produced water storage vessel emissions

to a control device to comply with the emissions reduction requirements of 40 C.F.R. §

60.5395a(a)(2).

126.    The following facilities are considered well production facilities, as defined in

Utah Administrative Code r. R307-501-2(2) and are subject to r. R307-501-1 through R307-

501-4: 5-25-36 BTR, Coleman Cordova 13.5-28-3-1E-H1, Coleman Cordova 14-28-3-1E-H1,

Coleman Tribal 7-18-4-2E, Cox 13-31-3-1E, Deep Creek 2-16-4-2E, Deep Creek 6-16-4-2E,

Deep Creek 7-16-4-2E, Kendall 13-7-3-1E, Kendall Tribal 1-13-3-1W, Kendall Tribal 1-13-3-

1W-H1, Marsh 12-35-3-1E, Marsh 13-35-3-1E, Merritt 1-18-3-1E-H1, Merritt 3-18-3-1E, ULT

12-34-3-1E, and Ute Energy 14-27-3-1E.

### Inspection Findings

127.    On June 26, July 29, and August 1 of 2018, and May 22, August 13 and 15

of 2019, inspectors from the EPA inspected the oil and natural gas production facilities

owned and operated by Crescent Point identified in Paragraphs 122, and 123126. The June

26, 2018 inspections were conducted jointly with the Ute Indian Tribal Air Program, the

May 22, 2019 inspections were conducted jointly with the UDAQ, and the August 13 and

15, 2019 inspections were conducted jointly with the UDAQ for facilities under state

jurisdiction and with the Ute Indian Tribal Air Program for facilities in Indian Country.

128.    At each of Crescent Point's oil and natural gas production facilities,

inspectors made OVA observations and used an optical gas-imaging infrared camera

("OGI" or "IR camera") to document the condition of the facility equipment and to detect

any emissions from the equipment.

129.    Out of 53 facilities inspected using OVA observations and an IR camera,

inspectors observed vapors being emitted directly to the atmosphere from storage vessels at

22 facilities that were subject to NSPS Subpart OOOO, NSPS Subpart OOOOa, State of

Utah AOs, and/or regulations in Utah Administrative Code r. R307-501-1 through r. R307-

501-4 at the time of inspection. These observations are as follows:

a. On June 26, 2018, the EPA conducted onsite inspections at six Crescent Point oil and natural gas production facilities in the Uinta Basin. Inspections were conducted jointly with the Ute Indian Tribal Air Program. Using OVA observations and an IR camera, the EPA and the Tribe observed vapors being emitted directly to the atmosphere from storage vessels at three of the six oil and natural gas production facilities inspected: Four Star Federal 6-27-7-20E, Ute Tribal 3-24-3-1W-H1, and Ute Tribal 4-23-3-1W-H1.

b. On July 29, 2018, and August 1, 2018, the EPA conducted inspections at twenty Crescent Point oil and natural gas production facilities in the Uinta Basin. Using OVA observations and an IR camera, the EPA observed vapors being emitted directly to the atmosphere from storage vessels at three of the twenty oil and natural gas production facilities inspected: 5-25-36 BTR, Marsh 12-35-3-1E, and Marsh 13-35-3-1E.

c. On May 22, 2019, the EPA conducted inspections at sixteen Crescent Point oil and natural gas production facilities in the Uinta Basin. Inspections were conducted jointly with the UDAQ for facilities under state jurisdiction. Using OVA observations and an IR camera, the EPA and UDAQ observed vapors being emitted directly to the atmosphere from storage vessels at six of the sixteen oil and natural gas production facilities inspected: Coleman Cordova 13.5-28-3-1E-H1, Coleman Cordova 14-28-3-1E-H1, Coleman Tribal 7-18-4-2E, Deep Creek 2-16-4-2E, Deep Creek 6-16-4-2E, and ULT 12-34-3-1E.

d.  On August 13 and 15, 2019, the EPA conducted inspections at twelve Crescent Point oil and natural gas production facilities in the Uinta Basin. Inspections were conducted jointly with the UDAQ. Using OVA observations and an IR camera, the EPA and UDAQ observed vapors being emitted directly to the atmosphere from storage vessels at ten of the twelve oil and natural gas production facilities inspected: Kendall 13-7-3-1E, Kendall Tribal 1-13-3-1W, Kendall Tribal 1-13-3-1W-H1, Kendall Tribal 13-7-6-3-1E-H4, Kendall Tribal 4-18-3-1E-H3, Merritt 1-18-3-1E-H1, Merritt 3-18-3-1E, Ute Tribal 2-13-4-2E-H1, Ute Tribal 2-22-27-3-2E-H1, and Ute Tribal 3-35-2-3-2E-H1.

130.  Out of 53 facilities inspected using OVA observations and an IR camera, inspectors observed, as evidenced by the absence of a pilot flame, absence of a heat signature, unburned hydrocarbon emissions as viewed with the IR camera, or a combination of the above, that combustors were not operating at 17 facilities that were subject to NSPS Subpart OOOO, NSPS Subpart OOOOa, State of Utah AOs, and/or regulations in Utah Administrative Code r. R307-501-1 through R307-501-4 at the time of inspection. The observations are as follows:

a.  During the June 26, 2018 inspections, EPA inspectors noted that the combustors at Ute Tribal 3-24-3-1W-H1 and Ute Tribal 4-23-3-1W-H1 were not operating. No pilot flame was present in the combustors, and no heat signature was observed from the combustors at either facility using the IR camera.

b.  During the July 29, 2018 and August 1, 2018 inspections, EPA inspectors

noted that the combustors at six facilities appeared to not be operating, as evidenced by the absence of a heat signature on the combustor when observed using an IR camera: 14-8D-36 BTR, 4-26-36 BTR, 5-10D-36 BTR, Deep Creek 16-24-3-1E, Marsh 13-35-3-1E, and ULT 6-26-3-1E.

c.    During the May 22, 2019 inspections, EPA inspectors noted that the combustors at five facilities were not operating, as evidenced by the absence of a pilot flame: Coleman Cordova 13.5-28-3-1E-H1, Coleman Cordova 14-28-3-1E-H1, Cox 13-31-3-1E, Deep Creek 7-16-4-2E, and Ute Energy 14-27-3-1E.

d.    During the August 13 and 15, 2019 inspections, EPA inspectors noted that the combustors at three facilities were not operating, as evidenced by the absence of a pilot flame: Kendall 13-7-3-1E, Kendall Tribal 1-13-3-1W, and Merritt 3-18-3-1E.

**Synthetic Minor Source Permit Annual Compliance Reports**

131.    On April 1, 2020, Uinta Wax Operating, LLC (then operating as CH4-Finley Operating, LLC) submitted to the EPA an annual compliance report for the Ute Tribal 20-02 Compressor Station, as required by Condition I.E.1 of Permit SMNSR-UO-008008-2017.001. The report covered the period of September 20, 2019 through December 31, 2019. Crescent Point owned and operated Ute Tribal 20-02 Compressor Station during a portion of that reporting period, from September 20, 2019 to October 18, 2019.

132.    In the annual compliance report for the Ute Tribal 20-02 Compressor Station, Uinta Wax Operating, LLC reported partial compliance with permit Conditions I.C.8 and I.C.9. In the report, Uinta Wax Operating, LLC indicated that the monthly AVO inspections

of the closed-vent system and enclosed combustor were not recorded during the reporting period, as required.

133.    On April 1, 2020, Uinta Wax Operating, LLC submitted to the EPA an annual compliance report for the Federal 10-22-6-20 well production facility, as required by Condition I.F.1 of permit SMNSR-UO-001835-2017.002. The report covered the period of August 19, 2019 through December 31, 2019. Crescent Point owned and operated the Federal 10-22-6-20 well production facility during a portion of that reporting period, from August 19, 2019 to October 18, 2019.

134.    In the annual compliance report for the Federal 10-22-6-20 well production facility submitted to the EPA on April 1, 2020, Uinta Wax Operating, LLC reported partial compliance with permit Condition I.C.3. In the report, Uinta Wax Operating, LLC indicated that the monitoring system for presence of a pilot light had not been installed on the flare, as required by Condition I.C.3(c)(iv) of Permit SMNSR-UO-001835- 2017.002.

135.    In the annual compliance report for the Federal 10-22-6-20 well production facility submitted to the EPA on April 1, 2020, Uinta Wax Operating, LLC reported partial compliance with permit Conditions I.C.4 and I.C.5. In the report, Uinta Wax Operating, LLC indicated that the monthly AVO inspections of the closed-vent system and flare were not recorded for the relevant period of August 19, 2019 to August 31, 2019, and October 1, 2019 to October 18, 2019, as required.

136.    In the annual compliance report for the Federal 10-22-6-20 well production facility submitted to the EPA on April 1, 2020, Uinta Wax Operating, LLC reported partial compliance with permit Condition I.D.3. In the report, Uinta Wax Operating, LLC reported that the monitoring system for presence of a pilot light had not been installed on the enclosed

combustor, as required by Condition I.D.3(c)(iv) of Permit SMNSR-UO-001835-2017.002, for the relevant period of August 19, 2019 to October 18, 2019.

137.    In the annual compliance report for the Federal 10-22-6-20 well production facility submitted to the EPA on April 1, 2020, Uinta Wax Operating, LLC reported partial compliance with permit Conditions I.D.4 and I.D.5. In the report, Uinta Wax Operating, LLC indicated that the monthly AVO inspections of the closed-vent system and enclosed combustor were not recorded for August 19, 2019 to August 31, 2019 and October 1, 2019 to October 18, 2019, as required.

## CLAIMS FOR RELIEF

### Claim 1

### Violations of NSPS Subpart OOOO in the State of Utah

138.    Paragraphs 1 through 137 are incorporated herein by reference.

139.    Paragraphs 138 through 146 are alleged jointly by the United States and the State of Utah.

140.    The storage vessels at the following eight oil and natural gas production facilities are subject to requirements for storage vessel affected facilities in NSPS Subpart OOOO: Deep Creek 15-24-3-1E, Deep Creek 16-24-3-1E, Deep Creek 7-16-4-2E, Kendall 13-7-3-1E, Marsh 12-35-3-1E, Merritt 3-18-3-1E, ULT 12-34-3-1E, and ULT 3-35-3-1E.

141.    The production startup dates and initial reporting deadlines for the facilities referenced in the previous paragraph are set forth in the following Table 2:

| Table 2: Production Startup and Initial Reporting Deadlines for Claim 1 NSPS OOOO Facilities | | |
|---|---|---|
| **Storage Vessel Affected Facility** | **Production Startup** | **Initial Report Deadline** |
| Deep Creek 15-24-3-1E | April 19, 2013 | July 18, 2014 |

| | | |
|---|---|---|
| Deep Creek 16-24-3-1E | July 6, 2014 | October 4, 2015 |
| Deep Creek 7-16-4-2E | October 24, 2013 | January 22, 2015 |
| Kendall 13-7-3-1E | April 17, 2014 | July 16, 2015 |
| Marsh 12-35-3-1E | July 19, 2013 | October 17, 2014 |
| Merritt 3-18-3-1E | September 6, 2013 | December 5, 2014 |
| ULT 12-34-3-1E | April 18, 2014 | July 17, 2015 |
| ULT 3-35-3-1E | July 13, 2014 | October 11, 2015 |

142.    From the production startup dates listed on Table 2, below, until October 18, 2019, Crescent Point failed to maintain and operate the following storage vessel affected facilities and associated air pollution control equipment in a manner consistent with good air pollution control practice for minimizing emissions, in violation of the requirements at 40 C.F.R. § 60.5370(b): Kendall 13-7-3-1E, Marsh 12-35-3-1E, Merritt 3-18-3-1E, and ULT 12-34-3-1E.

143.    From at least the initial report deadlines listed in Table 2, above, until October 18, 2019, Crescent Point failed to submit initial or annual reports containing the required information for storage vessel affected facilities at the following eight facilities, in violation of 40 C.F.R. § 60.5420(b): Deep Creek 15-24-3-1E, Deep Creek 16-24-3-1E, Deep Creek 7-16-4-2E, Kendall 13-7-3-1E, Marsh 12-35-3-1E, Merritt 3-18-3-1E, ULT 12-34-3-1E, and ULT 3-35-3-1E.

144.    Each of the violations alleged in Paragraphs **Error! Reference source not found.** through 143 are violations of Section 111 of the Act, 42 U.S.C. § 7411(e).

145.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), Crescent Point is

liable for civil penalties of up to $37,500 per day for each violation that occurred between January 13, 2009 and November 2, 2015. Crescent Point is liable for civil penalties of up to $102,638 per day for each violation that occurred after November 2, 2015. *See* 40 C.F.R. § 19.4.

146.    Pursuant to Section 19-2-115 of the Utah Act, Utah Code Ann. § 19-2-115(2)(a), Crescent Point is liable for civil penalties of up to $10,000 per day for each violation.

## Claim 2

### Violations of NSPS Subpart OOOOa in the State of Utah

147.    Paragraphs 1 through 146 are incorporated herein by reference.

148.    Paragraphs 147 through 160 are alleged jointly by the United States and the State of Utah.

149.    Storage vessels at the following three oil and natural gas production facilities in the State of Utah are subject to requirements for storage vessel affected facilities in NSPS Subpart OOOOa: Coleman Cordova 13.5-28-3-1E-H1, Coleman Cordova 14-28-3-1E-H1, and Kendall Tribal 1-13-3-1W-H1.

150.    The production startup dates and initial reporting deadlines for the facilities referenced in the previous paragraph are set forth in the following Table 3:

| Table 3: Production and Initial Reporting Deadlines for Claim 2 NSPS OOOOa Facilities | | |
| --- | --- | --- |
| **Storage Vessel Affected Facility** | **Production Startup** | **Initial Report Deadline** |
| Coleman Cordova 13.5-28-3-1E-H1 | October 16, 2017 | January 14, 2019 |
| Coleman Cordova 14-28-3-1EH1 | December 24, 2017 | March 24, 2019 |
| Kendall Tribal 1-13-3-1W-H1 | October 7, 2017 | January 5, 2019 |

151.    From at least the inspection dates listed in Table 4, below, until October 18, 2019, Crescent Point violated the storage vessel cover requirements of 40 C.F.R. § 60.5411a(b) at Coleman Cordova 13.5-28-3-1E-H1, Coleman Cordova 14-28-3-1E-H1, and Kendall Tribal 1-13-3-1W-H1 because the covers and/or openings on the covers (e.g., access hatches and pressure relief valves) did not form a continuous impermeable barrier over the entire surface area of the liquid in the storage vessel, as required by 40 C.F.R. § 60.5411a(b)(1); the storage vessel cover openings were not secured in a closed, sealed position, as required by 40 C.F.R. § 60.5411a(b)(2); and/or the storage vessel thief hatches were not maintained and operated to ensure that the lid remains property seated and sealed under normal operating conditions, including such times when working, standing/breathing, and flash emissions are generated, as required by 40 C.F.R. § 60.5411a(b)(3).

| Table 4: Dates of Facility Inspections for Claim 2 | |
|---|---|
| **Facility Name** | **Inspection Date** |
| Coleman Cordova 13.5-28-3-1E-H1 | May 22, 2019 |
| Coleman Cordova 14-28-3-1E-H1 | May 22, 2019 |
| Kendall Tribal 1-13-3-1W-H1 | August 15, 2019 |

152.    By failing to comply with the storage vessel closed vent system requirements of 40 C.F.R. § 60.5411a(b) as set forth in Paragraph 151 at Coleman Cordova 13.5-28-3-1E-H1, Coleman Cordova 14-28-3-1E-H1, and Kendall Tribal 1-13-3-1W-H1, Crescent Point violated the VOC standards for storage vessel affected facilities set forth at 40 C.F.R. § 60.5395a(b)(1).

153.    From the production startup dates listed in Table 3, above, until October 18, 2019, Crescent Point violated the storage vessel closed vent system requirements of 40 C.F.R. § 60.5411a(c) at Coleman Cordova 13.5-28-3-1E-H1, Coleman Cordova 14-28-3-1E-H1, and Kendall Tribal 1-13-3-1W-H1 because the closed vent systems were not designed to route all gases, vapors, and fumes emitted from the material in the storage vessel to a control device that meets the requirements specified in 40 C.F.R. § 60.5412a(c) and (d), or to a process, as required by 40 C.F.R. § 60.5411a(c)(1); or the closed vent systems were not designed and operated with no detectable emissions as determined using OVA inspections, as required by 40 C.F.R. § 60.5411a(c)(2).

154.    By failing to comply with the storage vessel closed vent system requirements of 40 C.F.R. § 60.5411a(c) as set forth in Paragraph 0 at Coleman Cordova 13.5-28-3-1E-H1, Coleman Cordova 14-28-3-1E-H1, and Kendall Tribal 1-13-3-1W-H1, Crescent Point violated the VOC standards for storage vessel affected facilities set forth at 40 C.F.R. § 60.5395a(b)(1).

155.    From at least the inspection dates listed on Table 4, above, until at least June 28, 2019, Crescent Point failed to operate a continuous burning pilot flame in the combustors at the Coleman Cordova 13.5-28-3-1E-H1 and Coleman Cordova 14-28-3-1E-H1 facilities, in violation of the control device requirements for storage vessel affected facilities set forth at 40 C.F.R. § 60.5412a(d)(1)(ii) or the continuous compliance requirements for combustion devices tested by the manufacturer set forth at 40 C.F.R. § 60.5413a(e)(2).

156.    From the production startup dates listed in Table 4, below, until October 18, 2019, Crescent Point failed to maintain and operate the following storage vessel affected

facilities and associated air pollution control equipment in a manner consistent with good air pollution control practice for minimizing emissions, in violation of the requirements set forth at 40 C.F.R. § 60.5370a(b): Coleman Cordova 13.5-28-3-1E-H1, Coleman Cordova 14-28-3-1E-H1, and Kendall Tribal 1-13-3-1W-H1

157.    From at least the initial report deadlines listed in Table 3, above, until October 18, 2019, Crescent Point failed to submit initial or annual reports containing the required information for storage vessel affected facilities at Coleman Cordova 13.5-28-3-1E-H1, Coleman Cordova 14-28-3-1EH1, and Kendall Tribal 1-13-3-1W-H1 in violation of 40 C.F.R. § 60.5420a(b).

158.    Each of the violations alleged in Paragraphs 149 through 157 are violations of Section 111 of the Act, 42 U.S.C. § 7411(e).

159.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), Crescent Point is liable for civil penalties of up to $37,500 per day for each violation that occurred between January 13, 2009 and November 2, 2015. Crescent Point is liable for civil penalties of up to $102,638 per day for each violation that occurred after November 2, 2015. *See* 40 C.F.R. § 19.4.

160.    Pursuant to Section 19-2-115 of the Utah Act, Utah Code Ann. § 19-2-115(2)(a), Crescent Point is liable for civil penalties of up to $10,000 per day for each violation.

## Claim 3

### Violations of State of Utah Approval Orders

161.    Paragraphs 1 through 160 are incorporated herein by reference.

162.    Paragraphs 161 through 170 are alleged jointly by the United States and the

State of Utah.

163. From at least the dates of inspection listed in Table 5, below, until October 18, 2019, Crescent Point violated Condition II.B.2.c or II.B.3.c of AOs issued for the following ten facilities by failing to keep storage tank thief hatches closed and latched or sealed except during tank unloading or other maintenance activities: Coleman Cordova 13.5-28-3-1E-H1, Coleman Cordova 14-28-3-1E-H1, Coleman Tribal 7-18-4-2E, Deep Creek 2-16-4-2E, Deep Creek 6-16-4-2E, Kendall 13-7-3-1E, Kendall Tribal 1-13-3-1W-H1, Marsh 12-35-3-1E, Merritt 1-18-3-1E-H1, and ULT 12-34-3-1E.

| Table 5. Facility Inspection Dates for Claim 3 | |
|---|---|
| **Facility Name** | **Date of Inspection** |
| Coleman Cordova 13.5-28-3-1E-H1 | May 22, 2019 |
| Coleman Cordova 14-28-3-1E-H1 | May 22, 2019 |
| Coleman Tribal 7-18-4-2E | May 22, 2019 |
| Deep Creek 2-16-4-2E | May 22, 2019 |
| Deep Creek 6-16-4-2E | May 22, 2019 |
| Kendall 13-7-3-1E | August 15, 2019 |
| Kendall Tribal 1-13-3-1W-H1 | August 15, 2019 |
| Marsh 12-35-3-1E | July 29, 2018 |
| Merritt 1-18-3-1E-H1 | August 15, 2019 |
| ULT 12-34-3-1E | May 22, 2019 |

164. From at least the dates of inspections listed on Table 5, above, until October 18, 2019, Crescent Point violated Condition II.B.2.b, II.B.3.a or II.B.3.b of AOs issued for the following facilities by failing to route all exhaust/gases/vapors/fumes from oil storage

tanks or produced water storage tanks to an operating combustor: Coleman Cordova 13.5-28-3-1E-H1, Coleman Cordova 14-28-3-1E-H1, Cox 13-31-3-1E, Deep Creek 2-16-4-2E, Deep Creek 6-16-4-2E, Deep Creek 7-16-4-2E, Kendall Tribal 1-13-3-1W, Kendall Tribal 1-13-3-1W-H1, Merritt 1-18-3-1E-H1, and Ute Energy 14-27-3-1E.

165.    From at least the dates of inspections listed on Table 5, above, until October 18, 2019, Crescent Point violated Condition II.B.3.a of AOs issued for the following facilities by failing to route all exhaust gas/vapors from oil storage tanks to an operating combustor/flare: Kendall 13-7-3-1E and ULT 12-34-3-1E.

166.    From at least the dates of inspections listed on Table 5, above, until October 18, 2019, Crescent Point violated Conditions II.B.3.b or II.B.4.a of AOs issued for the following facilities by failing to operate the combustor with a continuous pilot flame: Coleman Cordova 13.5-28-3-1E-H1, Coleman Cordova 14-28-3-1E-H1, Cox 13-31-3-1E, and Ute Energy 14-27-3-1E.

167.    From at least the dates of inspections listed on Table 5, above, until October 18, 2019, Crescent Point violated Condition II.A.2 of the AO issued for the ULT 12-34-3-1E facility, by installing and/or operating three 400-bbl oil storage tanks at the facility in excess of the two 400-bbl storage tanks allowed in the AO.

168.    From at least the dates of inspections listed on Table 5, above, and October 18, 2019, Crescent Point violated Condition I.5 of the AOs issued for the following facilities by failing to operate equipment approved under an AO (oil storage tanks, produced water storage tanks, heaters), including associated air pollution control equipment, in a manner consistent with good air pollution control practice for minimizing emissions: Coleman Cordova 13.5-28-3-1E-H1, Coleman Cordova 14-28-3-1E-H1, Coleman Tribal 7-18-4-2E,

Cox 13-31-3-1E, Deep Creek 2-16-4-2E, Deep Creek 6-16-4-2E, Deep Creek 7-16-4-2E, Kendall 13-7-3-1E, Kendall Tribal 1-13-3-1W, Kendall Tribal 1-13-3-1W-H1, Marsh 12-35-3-1E, Marsh 13-35-3-1E, Merritt 1-18-3-1E-H1, Merritt 3-18-3-1E, ULT 12-34-3-1E, and Ute Energy 14-27-3-1E.

169.     Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), Crescent Point is liable for civil penalties of up to $37,500 per day for each violation that occurred between January 13, 2009 and November 2, 2015. Crescent Point is liable for civil penalties of up to $102,638 per day for each violation that occurred after November 2, 2015. *See* 40 C.F.R. § 19.4.

170.     Pursuant to Section 19-2-115 of the Utah Act, Utah Code Ann. § 19-2-115(2)(a), Crescent Point is liable for civil penalties of up to $10,000 per day for each violation.

## Claim 4

### Violations of NSPS Subpart OOOOa in Indian Country

171.     Paragraphs 1 through 170 are incorporated herein by reference.

172.     Paragraphs 171 through 183, are alleged solely by the United States because these facilities are located in Indian Country.

173.     Storage vessels at the following eight oil and natural gas production facilities on the Uintah and Ouray Reservation are subject to requirements for storage vessel affected facilities in NSPS Subpart OOOOa: Four Star Federal 6-27-7-20E, Kendall Tribal 13-7-6-3-1E-H4, Kendall Tribal 4-18-3-1E-H3, Ute Tribal 2-13-4-2E-H1, Ute Tribal 2-22-27-3-2E-H1, Ute Tribal 3-24-3-1W-H1, Ute Tribal 3-35-2-3-2E-H1, and Ute Tribal 4-23-3-1W-H1.

174.    The production startup dates and initial reporting deadlines for the facilities

referenced in the previous paragraph  are set forth in the following Table 6:

| Table 6: Production Startup Dates for Claim 4 NSPS OOOOa Facilities | | |
|---|---|---|
| **Storage Vessel Affected Facility** | **Production Startup** | **Initial Compliance Date** |
| Four Star Federal 6-27-7-20E | November 29, 2015 | August 2, 2016 |
| Kendall Tribal 13-7-6-3-1E-H4 | August 1, 2018 | August 1, 2018 |
| Kendall Tribal 4-18-3-1E-H3 | April 2, 2018 | April 2, 2018 |
| Ute Tribal 2-13-4-2E-H1 | May 29, 2017 | May 29, 2017 |
| Ute Tribal 2-22-27-3-2E-H1 | April 28, 2017 | April 28, 2017 |
| Ute Tribal 3-24-3-1W-H1 | December 2, 2016 | December 2, 2016 |
| Ute Tribal 3-35-2-3-2E-H1 | August 11, 2017 | August 11, 2017 |
| Ute Tribal 4-23-3-1W-H1 | June 14, 2017 | June 14, 2017 |

175.    From at least the dates of inspection listed in Table 7, below, until October

18, 2019, Crescent Point violated the storage vessel cover requirements of 40 C.F.R. §

60.5411a(b) at the following eight facilities because the covers and/or openings on the

covers (e.g., access hatches and pressure relief valves) did not form a continuous

impermeable barrier over the entire surface area of the liquid in the storage vessel, as

required by 40 C.F.R. § 60.5411a(b)(1); the storage vessel cover openings were not secured

in a closed, sealed position, as required by 40 C.F.R. § 60.5411a(b)(2); or the storage vessel

thief hatches were not maintained and operated to ensure that the lid remains property

seated and sealed under normal operating conditions, including such times when working,

standing/breathing, and flash emissions are generated, as required by 40 C.F.R. §

60.5411a(b)(3): Four Star Federal 6-27-7-20E, Kendall Tribal 13-7-6-3-1E-H4, Kendall

Tribal 4-18-3-1E-H3, Ute Tribal 2-13-4-2E-H1, Ute Tribal 2-22-27-3-2E-H1, Ute Tribal 3-

24-3-1W-H1, Ute Tribal 3-35-2-3-2E-H1, and Ute Tribal 4-23-3-1W-H1.

| Table 7: Facility Inspection Dates for Claim 4 | |
|---|---|
| **Facility Name** | **Date of Inspection** |
| Four Star Federal 6-27-7-20E | June 26, 2018 |
| Kendall Tribal 13-7-6-3-1E-H4 | August 15, 2019 |
| Kendall Tribal 4-18-3-1E-H3 | August 15, 2019 |
| Ute Tribal 2-13-4-2E-H1 | August 13, 2019 |
| Ute Tribal 2-22-27-3-2E-H1 | August 13, 2019 |
| Ute Tribal 3-24-3-1W-H1 | June 26, 2018 |
| Ute Tribal 3-35-2-3-2E-H1 | August 13, 2019 |
| Ute Tribal 4-23-3-1W-H1 | June 26, 2018 |

176.    By failing to comply with the storage vessel closed vent system requirements

of 40 C.F.R. § 60.5411a(b) for the facilities listed in Paragraph 175, Crescent Point violated

the VOC standards for storage vessel affected facilities set forth at 40 C.F.R.

§ 60.5395a(b)(1).

177.    From the initial compliance dates listed in Table 6, above, until October 18,

2019, Crescent Point violated the storage vessel closed vent system requirements of 40

C.F.R. § 60.5411a(c) at the following eight facilities because the closed vent systems were

not designed to route all gases, vapors, and fumes emitted from the material in the storage

vessel to a control device that meets the requirements specified in 40 C.F.R. § 60.5412a(c)

and (d), or to a process, as required by 40 C.F.R. § 60.5411a(c)(1); or the closed vent

systems were not designed and operated with no detectable emissions as determined using

OVA inspections, as required by 40 C.F.R. § 60.5411a(c)(2): Four Star Federal 6-27-7-20E,

Kendall Tribal 13-7-6-3-1E-H4, Kendall Tribal 4-18-3-1E-H3, Ute Tribal 2-13-4-2E-H1,

Ute Tribal 2-22-27-3-2E-H1, Ute Tribal 3-24-3-1W-H1, Ute Tribal 3-35-2-3-2E-H1, and

Ute Tribal 4-23-3-1W-H1.

178.    By failing to comply with the storage vessel closed vent system requirements

of 40 C.F.R. § 60.5411a(c) for facilities listed in Paragraph 177, Crescent Point violated the

VOC standards for storage vessel affected facilities set forth at 40 C.F.R. § 60.5395a(b)(1).

179.    From at least the relevant inspection dates listed on Table 7, above, until

October 18, 2019, Crescent Point failed to operate a continuous burning pilot flame in the

combustors at the Ute Tribal 3-24-3-1W-H1 and Ute Tribal 4-23-3-1W-H1 facilities, in

violation of the control device requirements for storage vessel affected facilities set forth in

40 C.F.R. § 60.5412a(d)(1)(ii) or 60.5413a(e)(2).

180.    From at least the relevant dates of inspection listed in Table 7, above, until

October 18, 2019, at the Ute Tribal 2-22-27-3-2E-H1 facility, Crescent Point failed to

operate each control device at all times when gases, vapors, and fumes were vented to it

from the storage vessel affected facility through the closed vent system, in violation of the

control device requirements for storage vessel affected facilities at 40 C.F.R.

§ 60.5412a(d)(4).

181.    From the initial compliance dates listed in Table 6, above, until October 18,

2019, Crescent Point failed to maintain and operate the following storage vessel affected

facilities and associated air pollution control equipment in a manner consistent with good air

pollution control practice for minimizing emissions, in violation of the requirements at 40

C.F.R. § 60.5370a(b): Four Star Federal 6-27-7-20E, Kendall Tribal 13-7-6-3-1E-H4, Kendall Tribal 4-18-3-1E-H3, Ute Tribal 2-13-4-2E-H1, Ute Tribal 2-22-27-3-2E-H1, Ute Tribal 3-24-3-1W-H1, Ute Tribal 3-35-2-3-2E-H1, and Ute Tribal 4-23-3-1W-H1.

182.    Each of the violations alleged in Paragraphs 175 through **Error! Reference source not found.** are violations of Section 111 of the Act, 42 U.S.C. § 7411(e).

183.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), Crescent Point is liable for civil penalties of up to $37,500 per day for each violation that occurred between January 13, 2009 and November 2, 2015. Crescent Point is liable for civil penalties of up to $102,638 per day for each violation that occurred after November 2, 2015. *See* 40 C.F.R. § 19.4.

## Claim 5

### Violations of Tribal Synthetic Minor New Source Review Permits

184.    Paragraphs 1 through 183 are incorporated herein by reference.

185.    Paragraphs 183 through 192 are alleged solely by the United States because these facilities are located in Indian Country.

186.    From September 20, 2019 to October 18, 2019, Crescent Point violated Conditions I.C.8(a)-(c) and I.C.9(c) of Permit SMNSR-UO-008008-2017.001 by failing to conduct and record required monthly inspections of the closed-vent system and enclosed combustor used to control emissions from the TEG dehydrator at the Ute Tribal 20-02 Compressor Station.

187.    In August and October 2019, Crescent Point violated Conditions I.C.4(a) and (b) and I.C.5 of Permit SMNSR-UO-001835-2017.002 by failing to conduct and record required monthly inspections of the closed-vent system and flare used to control emissions

from the three-phase heater treater separator at the Federal 10-22-6-20 well production facility.

188.    In August and October 2019, Crescent Point violated Conditions I.D.4 and I.D.5 of Permit SMNSR-UO-001835-2017.002 by failing to conduct and record required monthly AVO inspections of the cover, closed-vent system, and enclosed combustor used to control emissions from the crude oil and produced water storage tanks at the Federal 10-22-6-20 well production facility.

189.    From August 19, 2019 to October 18, 2019, Crescent Point violated Condition I.C.3(c)(iv) of Permit SMNSR-UO-001835-2017.002 by failing to install a monitoring system for the presence of a pilot light on the flare used to control emissions from the three-phase heater treater separator at the Federal 10-22-6-20 well production facility.

190.    From August 19, 2019 to October 18, 2019, Crescent Point violated Condition I.D.3(c)(iv) of Permit SMNSR-UO-001835-2017.002 by failing to install a monitoring system for the presence of a pilot light on the enclosed combustor used to control emissions from the crude oil and produced water storage tanks at the Federal 10-22-6-20 well production facility.

191.    Each of the violations alleged in Paragraphs 184 through 190 are violations of Section 111 of the Act, 42 U.S.C. § 7411(e).

192.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), Crescent Point is liable for civil penalties of up to $37,500 per day for each violation that occurred between January 13, 2009 and November 2, 2015. Crescent Point is liable for civil penalties of up to

$102,638 per day for each violation that occurred after November 2, 2015. *See* 40 C.F.R. §
19.4.

## Claim 6

### Violations of Utah Air Quality Regulations for the Oil and Gas Industry

193.    Paragraphs 1 through 192 are incorporated herein by reference.

194.    Paragraphs 193 through 199 are alleged solely by the State of Utah because they
solely address violations of state regulations.

195.    The following seventeen facilities are subject to Utah air quality regulations
for the oil and gas industry in Utah Administrative Code r. R307-501-1 through R307-501-
4: 5-25-36 BTR, Coleman Cordova 13.5-28-3-1E-H1, Coleman Cordova 14-28-3-1E-H1,
Coleman Tribal 7-18-4-2E, Cox 13-31-3-1E, Deep Creek 2-16-4-2E, Deep Creek 6-16-4-
2E, Deep Creek 7-16-4-2E, Kendall 13-7-3-1E, Kendall Tribal 1-13-3-1W, Kendall Tribal
1-13-3-1W-H1, Marsh 12-35-3-1E, Marsh 13-35-3-1E, Merritt 1-18-3-1E-H1, Merritt 3-18-
3-1E, ULT 12-34-3-1E, and Ute Energy 14-27-3-1E. The State of Utah and EPA inspected
these facilities on the following dates:

| Table 9: Facility Inspection Dates for Claim 6 | |
| --- | --- |
| **Facility Name** | **Inspection Date** |
| 5-25-36 BTR | August 1, 2018 |
| Coleman Cordova 13.5-28-3-1E-H1 | May 22, 2019 |
| Coleman Cordova 14-28-3-1E-H1 | May 22, 2019 |
| Coleman Tribal 7-18-4-2E | May 22, 2019 |
| Cox 13-31-3-1E | May 22, 2019 |
| Deep Creek 2-16-4-2E | May 22, 2019 |

| | |
|---|---|
| Deep Creek 6-16-4-2E | May 22, 2019 |
| Deep Creek 7-16-4-2E | May 22, 2019 |
| Kendall 13-7-3-1E | August 15, 2019 |
| Kendall Tribal 1-13-3-1W | August 15, 2019 |
| Kendall Tribal 1-13-3-1W-H1 | August 15, 2019 |
| Marsh 12-35-3-1E | July 29, 2018 |
| Marsh 13-35-3-1E | July 29, 2018 |
| Merritt 1-18-3-1E-H1 | August 15, 2019 |
| Merritt 3-18-3-1E | August 15, 2019 |
| ULT 12-34-3-1E | May 22, 2019 |
| Ute Energy 14-27-3-1E | May 22, 2019 |

196.    From at least the relevant dates of inspection listed in Table 9, above, until October 18, 2019, Crescent Point violated Utah Administrative Code r. R307-501-4(1)(a) at the following twelve facilities by failing to minimize emissions of VOC to the atmosphere to the extent reasonably practicable: 5-25-36 BTR, Coleman Cordova 13.5-28-3-1E-H1, Coleman Cordova 14-28-3-1E-H1, Deep Creek 2-16-4-2E, Deep Creek 6-16-4-2E, Kendall 13-7-3-1E, Kendall Tribal 1-13-3-1W, Marsh 12-35-3-1E, Marsh 13-35-3-1E, Merritt 1-18-3-1E-H1, Merritt 3-18-3-1E, and ULT 12-34-3-1E.

197.    From at least the relevant dates of inspection listed in Table 9, above, until October 18, 2019, Crescent Point violated Utah Administrative Code r. R307-501-4(1)(b) at the following seventeen facilities by failing to maintain and operate the installation or air pollution control equipment in a manner consistent with good air pollution control practices for minimizing emissions: 5-25-36 BTR, Coleman Cordova 13.5-28-3-1E-H1, Coleman

Cordova 14-28-3-1E-H1, Coleman Tribal 7-18-4-2E, Cox 13-31-3-1E, Deep Creek 2-16-4-2E, Deep Creek 6-16-4-2E, Deep Creek 7-16-4-2E, Kendall 13-7-3-1E, Kendall Tribal 1-13-3-1W, Kendall Tribal 1-13-3-1W-H1, Marsh 12-35-3-1E, Marsh 13-35-3-1E, Merritt 1-18-3-1E-H1, Merritt 3-18-3-1E, ULT 12-34-3-1E, and Ute Energy 14-27-3-1E.

198.    From at least the relevant dates of inspection listed on Table 9, above, until October 18, 2019, Crescent Point violated Utah Administrative Code r. R307-501-4(2)(a) at the following seven facilities by failing to operate and maintain air pollution control equipment pursuant to manufacturing specifications or equivalent to the extent practicable and consistent with technological limitations and good engineering and maintenance practices: Coleman Cordova 13.5-28-3-1E-H1, Coleman Cordova 14-28-3-1E-H1, Cox 13-31-3-1E, Deep Creek 7-16-4-2E, Kendall 13-7-3-1E, Kendall Tribal 1-13-3-1W, and Ute Energy 14-27-3-1E.

199.    Pursuant to Section 19-2115 of the Utah Act, Utah Code Ann. § 19-2-115(2)(a), Crescent Point is liable for civil penalties of up to $10,000 per day for each violation alleged in Paragraphs 196-198.

## **PRAYER FOR RELIEF**

Wherefore, the United States requests that this Court:

i.    Assess civil penalties against Crescent Point of up to $102,638 per day for each violation for violations alleged jointly by the United States and the State of Utah and violations alleged solely by the United States;

ii.    Assess civil penalties against Crescent Point of up to $10,000 per day for each violation for violations alleged solely by the State of Utah;

iii.    Award any other appropriate relief in accordance with the Act at Section 113(b),

42 U.S.C. § 7413(b) and the Utah Act at Section 19-2-115, Utah Code Ann. § 19-2-115; and

      iv.    Grant such other relief as the Court deems just and proper.

Respectfully submitted,

FOR THE UNITED STATES, ON BEHALF
OF THE U.S. ENVIRONMENTAL
PROTECTION AGENCY

NATHANIEL DOUGLAS
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice

JAMES D. FREEMAN
Environmental Enforcement Section
U.S. Department of Justice

Attorneys for Plaintiff United States of America

FOR THE STATE OF UTAH, ON BEHALF OF
UTAH DEPARTMENT OF ENVIRONMENTAL
QUALITY, UTAH DIVISION OF AIR
QUALITY


SEAN D. REYES
Utah Attorney General



s/Marina V. Thomas_____
MARINA V. THOMAS
Utah Assistant Attorney General
Utah Attorney General's Office
Environment & Health Division


Attorneys for Plaintiff State of Utah